| Regal Commodities v Tauber |
|:---:|
| 2022 NY Slip Op 34907(U) |
| March 10, 2022 |
| Supreme Court, Kings County |
| Docket Number: Index No. 524427/2019 |
| Judge: Reginald A. Boddie |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

At an IAS Commercial Part 12 of the
Supreme Court of the State of New York,
held in and for the County of Kings, at the
Courthouse, located at 360 Adams Street,
Borough of Brooklyn, City and State of New
York on the 10th day of March 2022.

PRESENT:
Honorable Reginald A. Boddie
Justice, Supreme Court

---------------------------------------------------------------------x

REGAL COMMODITIES,

        Plaintiff,

   -against-

SCOTT TAUBER, HENA COFFEE, INC d/b/a
BROOKLYN COFFEE HOUSE,

        Defendants.

---------------------------------------------------------------------x

Index No. 524427/2019
Cal. No. 17, 18 MS 6, 7

DECISION AND ORDER

Recitation, as required by CPLR 2219 (a), of the papers considered in the review of this motion:

| Papers | Numbered |
| --- | --- |
| MS 6 | Docs # 146-179 |
| MS 7 | Docs # 177-204 |

Upon the foregoing cited papers, plaintiff's motion for summary judgment (MS 6), pursuant to CPLR 3212, and defendant Tauber's cross motion for partial summary judgment (MS 7), pursuant to CPLR 3212, are decided as follows:

This action, filed on November 7, 2019, arose from a dispute about the purchase of coffee futures and products. Plaintiff filed an amended complaint on December 10, 2019, and second amended complaint on July 9, 2021. The complaint asserted as a first cause of action breach of contract and lost profits in the amount of $402, 217.71. The second cause of action sought personal liability against Tauber for failure to disclose his principles and $402, 217.71 in

1

[* 1]



damages. The third cause of action alleged account stated for coffee materials in the amount of $25,393.19.

Defendants answered on December 30, 2019, and filed a second amended answer on July 30, 2021, which consisted of numerous affirmative defenses, including failure to mitigate, and a counterclaim for plaintiff's failure to comply with an agreement permitting defendant to display signage for Hena and Brooklyn Coffee at its location. Plaintiff moved for summary judgment in entirety. Defendant, Scott Tauber, sought partial summary judgment on the ground he was entitled to dismissal as an individual defendant since he acted as a disclosed agent for all the entities.

It is undisputed that Tauber is the president and co-owner of Hena Coffee Inc. (Hena) and Brooklyn Coffee d/b/a/ Brooklyn Coffee House. Raymond Borriello (Boriello) is Tauber's business partner and together they run Hena. The transaction involved in this lawsuit was discussed in or around September 2017. On September 20, 2017, Tauber, from his Hena email address, sent Joseph Apuzzo (Apuzzo), the president of plaintiff, an email outlining the details of the proposed purchase of coffee by Hena, stating:

> Presently Hena, Inc. sells 850,000-900,000 lbs. of coffee per year. This number does not include our Radar Foods/Brooklyn Coffee House 12 oz. program. Single Server units are just starting to move and these items are not included with respect to poundage We would like to lock in 500,000 pounds of coffee at our current price for Brooklyn Coffee House 12 oz. packages. Since we do other products under the Brooklyn, Radar and Hena banner, we feel the poundage noted above can be easily attained. It is apparent what our end goal is; do more coffee with Regal while going out into the market place and selling much more coffee and reducing our overhead at the same time. Please get back to us on how to achieve this lock in price. I will be out of the office tomorrow; should you need to correspond with us Raymond will be around to take your call.

On or about September 25, 2017, Apuzzo sent an email to Tauber, at his Hena email address, in response to Tauber's September 20, 2017 email which stated:

2

[* 2]

As we discussed by phone the 500,000 pounds of coverage that you are requesting is for the period of one year. If you have not sold this quantity by April 1st you will purchase the unsold poundage for Hena. The reasoning being this would represent 6 months of usage for Hena. If this is unclear, please speak with me. I have attached a copy of an agreement I can live with. I am hopeful the same will be the case for you. Thank you.

Defendant alleged no agreement accompanied Apuzzo's September 25, 2017 email. Nevertheless, on December 28, 2017, Apuzzo sent an email to Tauber, at his Hena email address, and Borriello, which stated: "I trust that you both had good Holidays. You have already verbally agreed to the condition below concerning the 500,000 pounds of futures coverage that we have undertaken for you. For our records I would like your written agreement also. An email response in the affirmative will suffice."

On January 8, 2018, Tauber, from his Hena email address, responded stating: "Raymond and I agree to the usage of 500,000 lbs. of coffee futures that Regal has purchased for our account. Should you need anything more to secure this agreement please don't hesitate to ask." Defendant averred plaintiff also agreed to allow Hena and Brooklyn Coffee to display signage and host meetings at Plaintiff's main business facility in New Jersey to promote its products to current and potential customers. Defendant averred this never occurred, preventing Brooklyn Coffee from successfully marketing its products and impacting its sales. Ultimately, Hena and Brooklyn Coffee did not purchase 500,000 pounds of coffee from plaintiff.

Plaintiff asserted defendant contracted to buy 500,000 pounds of coffee product from plaintiff by April 1, 2018, and only purchased 51,157 pounds. Plaintiff alleged it suffered damages in the amount of $157,095.05, as a result. More specifically, plaintiff alleged, "On your instruction on October 4th, 2017 we purchased 500,000 of futures market coverage at $1.30 per pound. Today's market is 95 cents. You have placed orders for 51,157 pounds of coffee to date.

3

[* 3]

That leaves a balance of 448,843 pounds. You owe Regal 35 cents per pound on 448.843 pounds or $157,095."

Defendant acknowledged an agreement with plaintiff for the purchase of 500,000 pounds of coffee. However, defendant averred plaintiff is impermissibly seeking lost profits and failed to allege how it is now owed $402,217.71 or how defendant could reasonably have foreseen it would seek that amount. Defendant contended damages were not anticipated by the parties, but rather, that plaintiff would sell the remaining product to another entity. Defendant also averred he should be dismissed from personal liability in the lawsuit since he acted on behalf of disclosed principles. Plaintiff opposed.

Summary judgment is a drastic remedy and should not be granted where there is any doubt as to the existence of a triable issue (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). A party moving for summary judgment must make a prima facie showing of entitlement as a matter of law sufficient to demonstrate the absence of any material issues of fact, but once a prima facie showing has been made, the burden shifts to the party opposing the motion to produce evidentiary proof in admissible form sufficient to establish material issues of fact which require trial of the action (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]; *Zuckerman*, 49 NY2d at 562).

Here, plaintiff moved for summary judgment on its three causes of action. The initial burden of proof on summary judgment is on the plaintiff. It is undisputed that plaintiff and defendants entered into a contract for the purchase of 500,000 pounds of coffee. However, plaintiff's memorandum of law sought to place the burden of proof on defendant and failed to sufficiently address plaintiff's burden. Nevertheless, neither party disputed that a contract was created for the sale of 500,000 pounds of coffee, and that the specified amount was not purchased.

4

[*4]

UCC 2-106 governs contracts for the sale of goods, as here, whether for present or future products. UCC2-703 details the sellers remedies in the event of a breach and provides as follows:

> Where the buyer wrongfully rejects or revokes acceptance of goods or fails to make a payment due on or before delivery or repudiates with respect to a part or the whole, then with respect to any goods directly affected and, if the breach is of the whole contract as provided in ORS 72.6120, then also with respect to the whole undelivered balance, the aggrieved seller may:
>> (1) Withhold delivery of such goods.
>> (2) Stop delivery by any bailee as provided in ORS 72.7050.
>> (3) Proceed under ORS 72.7040 respecting goods still unidentified to the contract.
>> (4) Resell and recover damages as provided in ORS 72.7060.
>> (5) Recover damages for nonacceptance as provided in ORS 72.7080 or in a proper case the price as provided in ORS 72.7090.
>> (6) Cancel.

Concerning damages for nonacceptance or repudiation, UCC 2-708 provides:

> (1) Subject to subsection (2) of this section and to the provisions of ORS 72.7230 with respect to proof of market price, the measure of damages for nonacceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in ORS 72.7100, but less expenses saved in consequence of the buyer's breach.
> (2) If the measure of damages provided in subsection (1) of this section is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in ORS 72.7100, due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.

Here, plaintiff sought the difference in profits lost but failed to address and deduct, under option 1, any expenses saved in consequence of the breach or deduct, under option 2, due credit for payments or proceeds of the resale. Moreover, plaintiff never mentioned what happened to the remaining coffee that defendants failed to purchase. Accordingly, plaintiff failed to meet its burden of proof on summary judgment on its first cause of action

As for the third cause of action for account stated, plaintiff sought $25,393 for coffee-related products allegedly delivered to defendant Tauber. "An account stated is an agreement

between [the] parties to an account based upon prior transactions between them with respect to the correctness of the account items and balance" (*American Express Centurion Bank v Cutler*, 81 AD3d 761 [2d Dept 2011]). An agreement may be implied where a defendant retains bills without objecting to them within a reasonable period of time or makes partial payment on the account (*id.*).

Here, plaintiff failed to properly authenticate the bills as business records and establish with evidentiary submissions the basis and salient facts underlying its cause of action for an account stated. Accordingly, plaintiff failed to meet its burden of proof as to the first and third causes of action, and the court need not consider the merits of defendant's opposition (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

Plaintiff also moved for summary judgment on its second cause of action seeking to hold Tauber personally liable for the transactions as an undisclosed agent. Plaintiff alleged Tauber was apparently acting not only for his companies but for certain undisclosed parties and should be personally liable. Defendant contends all the entities he was acting on behalf of were disclosed.

"The defense of agency in avoidance of contractual liability is an affirmative defense and the burden of establishing the disclosure of the agency relationship and the corporate existence and identity of the principal is upon he [or she] who asserts an agency relationship" (*Safety Envtl., Inc. v Barberry Rose Mgt. Co., Inc.*, 94 AD3d 969, 969 [2d Dept 2012] [citations omitted]). " 'An agent who acts on behalf of a disclosed principal will generally not be liable for a breach of contract.' 'A principal is considered to be 'disclosed' if, at the time of a transaction conducted by an agent, the other party to the contract had notice that the agent was acting for the principal and of the principal's identity." 'Knowledge of the real principal is the test, and this means actual knowledge, not suspicion' " (*Safety Envtl., Inc.*, 94 AD3d at 970 [internal citations omitted]). A

[* 6]

principal is considered to be disclosed if the other party is aware of the principal at the time of the transaction (*see id.*).

Here, defendant established plaintiff was aware of the principals for which he was acting. Accordingly, defendant met its burden of proof and plaintiff failed to rebut same. Therefore, plaintiff's motion for summary judgment is denied in entirety. Defendant's motion for summary judgment on the issue of lack of personal liability is granted and accordingly, plaintiff's second cause of action is dismissed.

ENTER:

_____
Hon. Reginald A. Boddie
Justice, Supreme Court

HON. REGINALD A. BODDIE
J.S.C.